DAUBE v. OKLAHOMA TAX COMMISSION.

No. 31625. May 23, 1944.

Rehearing Denied Sept. 12, 1944.

Application for Leave to File Second Petition for Rehearing Denied Nov. 14, 1944.

*152 P. 2d 687.*

Geo. N. Otey and R. Rhys Evans, both of Ardmore, for plaintiff in error.

E. L. Mitchell and A. L. Herr, both of Oklahoma City, for defendant in error.

GIBSON, V. C. J. This action was instituted in district court by a taxpayer against Oklahoma Tax Commission to recover the amount of a gift tax paid under protest.

Plaintiff stood on his petition after demurrer thereto was sustained, and now appeals from the judgment of dismissal.

The gift, valued at approximately $100,000, was made in the year 1942 while the so-called gift tax law of 1941

488

was in force (ch. 22a, Title 68, S. L. 1941, 68 O. S. 1941 §§ 1041-1047; amended, 68 O. S. Supp. 1943 §§ 1043, 1045). The tax charged and collected amounted to $3,698.46.

The petition attacked the constitutionality of the act. That is the only question presented by the appeal.

The principal objections to the act as voiced by the plaintiff are that the attempt therein to levy a graduated gift tax violates that portion of section 5, art. 10, Constitution, which requires that taxes shall be uniform on the same class of subjects. And further, that the power granted the Legislature by section 12, of said article 10, to provide for special forms of taxation does not include the power to levy a graduated gift tax, but that said section, when considered and construed along with section 5, supra, actually denies that power to the Legislature in view of the rule that the expression of one thing is the exclusion of another, or implies the exclusion of another.

Section 12 specifically authorizes certain types of graduated taxes, but graduated gift taxes are not included therein. The section reads as follows:

"The Legislature shall have power to provide for the levy and collection of license, franchise, gross revenue, excise, income, collateral and direct inheritance, legacy, and succession taxes; also graduated income taxes, graduated collateral and direct inheritance taxes, graduated legacy and succession taxes; also stamp, registration, production or other specific taxes."

Section 2 of the act (68 O. S. 1941 § 1042) provides for an increased rate of taxation with the increasing value of the gifts; that is, a progressive tax, with a changed rate for different specified values.

The question is whether the Legislature may classify gifts according to value for the purpose of taxation.

Plaintiff says that gifts, if taxable at all, constitute a distinct subject of taxation, and by reason of their inherent

nature can constitute but a single classification, not subject to numerous reclassifications based upon value. That so to reclassify, it is said, destroys uniformity which is guarded against by section 5, supra.

The Legislature is not to be prevented from classifying property for purposes of taxation, and it may value different classes by different means or methods. Section 22, art. 10, Const. But that section applies to property and not to subjects that cannot be classed as property. However, the state has the inherent power to classify its subjects of taxation whether for the purpose of levying a property tax or an excise tax. That would include the power to classify gifts as a subject of taxation; in fact, the Constitution, section 12, supra, authorizes the Legislature to provide for the levy and collection of excise taxes in general. That would seem to include the power to provide for the levy and collection of taxes on gifts inter vivos. And the Constitution says that the state may select its subjects of taxation (sec. 13, art. 10). That is merely the recognition of an inherent sovereign power. 61 C. J. 76.

Our statute imposes the tax "upon the transfer . . . of property by gift." That can be nothing other than an excise upon the privilege of so transferring property.

Gifts, other than gifts causa mortis, had never been made the subject of taxation in English speaking countries until Congress passed the Revenue Act of 1924. See 112 A. L. R. 1448, anno. But gifts inter vivos are now generally regarded as proper subjects of taxation; and the Supreme Court of the United States has approved the graduated rate feature. See Bromley v. McCaughn, 280 U. S. 124, 74 L. Ed. 226, 50 S. Ct. 46; also, 112 A. L. R. 1448-1449. The purpose of the gift tax, in the opinion of the same court, was "largely to prevent evasion of the estate tax by gifts inter vivos, and evasion of the income tax by the splitting up of fortunes and the consequent diminution of surtaxes."

Untermyer v. Anderson, 276 U. S. 440, 72 L. Ed. 645, 48 S. Ct. 353.

But we are not justified in saying that our own gift tax law was enacted for any purpose other than as a revenue measure.

Our Constitution contains no specific provision against the levying of a graduated rate of taxation on gifts or any other subject of taxation. Nor does it specifically authorize such a rate on gifts. Though section 12 provides for the levy of excise taxes in general, and a graduated rate in particular on income, collateral and direct inheritance, legacy and succession taxes, it is silent as to a graduated levy on gifts inter vivos.

It follows that such levies must come within the powers of the Legislature unless the classification on the basis of value alone is fictitious, and an arbitrary exercise of the power granted by section 22, supra, to classify property for purposes of taxation and to value different classes by different means and methods. If the classification is unreal and without substantial basis, the graduated levy applied to such fictitious classes would be unjustified and void in the face of the requirement that taxes shall be uniform on the same class of subjects (sec. 5, supra).

With respect to excises, the ability of the taxpayer to pay the tax is generally recognized as a substantial ground for classification of subjects for the purpose of graduated rates or levies. Knowlton v. Moore, 178 U. S. 41, 20 S Ct. 747. In that case the court said:

"The review which we have made exhibits the fact that taxes imposed with reference to the ability of the person upon whom the burden is placed to bear the same have been levied from the foundation of the government. So, also some authoritative thinkers, and a number of economic writers, contend that a progressive tax is more just and equal than a proportional one. In the absence of constitutional limitation, the question whether it is or is not is legislative and not judicial."

And the Supreme Court of South Dakota looks upon the classification as one of individuals and not of rights, privileges, or property. In the case In re McKennan's Estate, 17 S.D. 136, 130 N. W. 33, the court held:

"As to inheritance and excise tax laws, the constitutional requirement of equality and uniformity is satisfied, if there is equality and uniformity between the individuals constituting each class established by the law."

In Wisconsin it is held that the uniformity clause, like the equal protection clause, means "only that such taxation shall not unjustly discriminate, but shall operate alike upon all persons similarly situated." Nunnemacher, Trustee, v. The State, 129 Wis. 190, 108 N. W. 627.

In Indiana the rule is that an excise tax with a rate increasing with the increasing amount levied on does not violate the clause of the State Constitution providing for uniformity and equality of taxation. Crittenberger v. The State Savings and Trust Co., 189 Ind. 411, 127 N. E. 552. Many states have applied a like rule. We know of none, except Pennsylvania, Minnesota, and Washington, where it has been held that a progressive excise tax violated the uniformity clause of the local Constitution. Knowles' Estate, 295 Pa. 571; State v. Gorman, 40 Minn. 232; State v. Case, 39 Wash. 177.

It would seem, therefore, that the basis of classification in cases of this character is made to rest upon the individual taxpayer and his ability to pay, and that such ability is measured by the value of the subject of the tax.

Most courts recognize such classification as just and reasonable; and our Constitution does not prohibit it in so many words.

Plaintiff says, however, that the framers of the Constitution by specifically providing in section 12, supra, for a graduated tax on certain subjects therein mentioned intended to exclude the power to levy such a tax on all subjects omitted therein. He insists that this

circumstance requires the application of the rule to the effect that the express mention of one thing implies the exclusion of another. Cornell v. McAlister, 121 Okla. 285, 249 P. 959; Ramsey v. Leeper, 168 Okla. 43, 31 P. 2d 852; Natural Gas Development Corp. v. Oklahoma Tax Comm., 188 Okla. 557, 111 P. 2d 483.

But an inherent power in the Legislature cannot be excluded by mere implication arising from the fact that the Constitution granted specific powers but failed to mention or provide for such inherent power. If such power is to be excluded by implication the express powers enumerated should be accompanied by negative terms whereby such exclusion would arise by reasonable implication. In MacMillan Co. v. Clarke, 184 Cal. 491, 194 P. 1030, it was said that express enumeration of powers is not exclusive of others not named unless accompanied by negative terms. That applies particularly in this case.

Plaintiff contends further that the statute violates the due process and equal protection clauses of the State and Federal Constitutions. State Const. art. 2, § 7 and Fed. Const. Amend. 14.

The argument is, first, that the act fails as to due process in that the tax is made a lien on all property of the donee in event the donor fails to pay, and neglects to provide for notice to the donee before levy of the tax.

Assuming that the donor may question the validity of the statute from that standpoint (see Bennett v. State, 147 Okla. 14, 294 P. 149), we look upon the alleged deficiency as in no way fatal to the statute. Full acceptance of the gift is necessary to its completion, and, in accepting, the donee must take cognizance of the law that the gift and his other property may become subject to the tax as is the case in most forms of taxation.

As to equal protection, plaintiff asserts that the statute is objectionable in that it applies to individual donors and excludes corporations, thus discriminating in favor of the latter and against the former; that it applies to no gifts made to charitable institutions, and so discriminates against all other donors; that it authorizes a $2,500 exemption to resident taxpayers for each $2,500 given to separate parties, thus permitting, for instance, gifts aggregating $25,000 to ten separate persons of $2,500 each without tax while a gift of $25,000 to one person would be subject to taxes on $22,500 thereof, and thereby discriminates against resident taxpayers; that it requires returns to be filed by those who make gifts in excess of $5,000 while gifts under that amount need not be reported.

The equal protection clause is satisfied if the statute applies alike or in reasonable degree to all parties in the same class.

We have said above that classification based on value is reasonable and not fictitious or arbitrary.

And we know of no valid reason why individual donors might not be placed in a class for the purpose of the tax and corporations excluded. The exemption of gifts to charitable institutions is in line with constitutional exemptions (sec. 6, art. 10, Const.). Exemption of gifts under a certain value should not constitute discrimination if such exemptions are not discriminations under the income tax law; and everywhere the latter exemption has been sustained.

It is further said that the statute discriminates against nonresident donors in that it subjects all their gifts in the state to taxation while it exempts resident donors to the extent of the first $2,500. But plaintiff is in no position to urge such alleged defects. That portion of the act is not shown to result in likely injury to him. Bennett v. State, supra.

It appears that the act in question, so far as plaintiff is concerned, is valid.

The judgment is affirmed.

CORN, C. J., and RILEY, OSBORN, BAYLESS, HURST, DAVISON, and ARNOLD, JJ., concur.