99 P.3d 241 (2004)
2004 OK 59
Jerry R. FENT, as a resident taxpayer, citizen, and voter of the State of Oklahoma, and all other similar taxpaying persons, Plaintiff/Appellant,
v.
STATE of Oklahoma, ex rel. OKLAHOMA TAX COMMISSION; Thomas E. Kemp, Jerry B. Johnson and Connie Kirby, in their official capacity as Oklahoma Tax Commissioners; and Robert A. Butkin, in his official capacity as the Oklahoma State Treasurer, and/or all their successors in office, Defendants/Appellees.
No. 99,480.
Supreme Court of Oklahoma.
July 6, 2004.
Rehearing Denied October 11, 2004.
*242 Robert T. Keel, Oklahoma City, OK, for Plaintiff/Appellant.
Scott D. Boughton, Assistant Attorney General, Office of the Attorney General, Oklahoma City, OK, for Defendant/Appellee Robert A. Butkin, in his official capacity as the Oklahoma State Treasurer.
Cara S. Nicklas, Assistant General Counsel, Oklahoma Tax Commission, for Defendants/Appellees State of Oklahoma ex rel. Oklahoma Tax Commission and Thomas E. Kemp, Jr., Jerry B. Johnson and Connie Irby, in their official capacities as Oklahoma Tax Commissioners.
¶ 0 The plaintiff sought a declaratory judgment that Oklahoma's earned income credit statute, 68 O.S.2001 § 2357.43, is unconstitutional. *243 The district court of Oklahoma County, Honorable David M. Harbour, rendered judgment on the legal merits in favor of defendants as to the plaintiff's failure to state claims for declaratory relief and writ of injunction and/or mandamus. The trial court ruled that Oklahoma's Earned Income Tax Credit is constitutional and legal. The Court of Civil Appeals affirmed the trial court.
CERTIORARI PREVIOUSLY GRANTED; OPINION OF THE COURT OF CIVIL APPEALS IS VACATED; TRIAL COURT AFFIRMED.
HARGRAVE, J.
¶ 1 Plaintiff/appellant Jerry R. Fent, as resident taxpayer, citizen and voter of the State of Oklahoma filed an action in district court seeking a declaratory judgment that Oklahoma's Earned Income Tax Credit statute, 68 O.S.2001 § 2357.43, is unconstitutional, and sought a writ of injunction and/or mandamus. Plaintiff filed a motion for summary judgment, and the State Treasurer filed a motion to dismiss on the grounds that he was not a necessary or proper party defendant. The trial court denied the State Treasurer's Motion to Dismiss and denied the plaintiff's motion for summary judgment. The defendants orally moved to dismiss for failure of plaintiff to state a claim. The trial court rendered judgment on the legal merits in favor of defendants as to the plaintiff's failure to state claims for declaratory relief and writ of injunction and/or mandamus, finding that there were only legal issues to be determined. The trial court ruled that Oklahoma's Earned Income Tax Credit is constitutional and legal. The Court of Civil Appeals, Division III, affirmed, finding that the earned income credit is a tax refund which never became a part of state revenue subject to appropriation. Plaintiff Fent petitioned for writ of certiorari to the Court of Civil Appeals, which was granted on January 20, 2004.
¶ 2 At issue is a new law passed by the legislature during the 2001 legislative session. Title 68 O.S. § 2357.43 provides:
§ 2357.43 State Earned Income Tax Credit
For tax years beginning after December 31, 2001, there shall be allowed to a resident individual or part-year resident individual as a credit against the tax imposed by Section 2355 of this title five percent (5%) of the earned income tax credit allowed under Section 32 of the Internal Revenue Code of the United States, 26 U.S.C. Section 32. However, this credit shall not be paid in advance pursuant to the provisions of Section 3507 of the Internal Revenue Code. If the credit exceeds the tax imposed by Section 2355 of this title, the excess amount shall be refunded to the taxpayer. The maximum earned income tax credit allowable on the Oklahoma income tax return shall be prorated on the ratio that Oklahoma adjusted gross income bears to the federal adjusted gross income. Laws 2001, ch. 383, § 1, eff. July 1, 2001. (editorially renumbered from 68 O.S. § 2357.42 to avoid duplication in numbering).
¶ 3 Congress adopted the federal earned income credit in 1975. Title 26 U.S.C. § 32 allows eligible individuals a credit against the tax imposed under the income tax code for the taxable year an amount equal to the credit percentage of so much of the taxpayer's earned income for the taxable year that does not exceed the earned income amount. This credit is a refundable credit that is to be considered an overpayment under 26 U.S.C. § 6401(b). The United States Supreme Court construed the federal earned income tax credit in Sorenson v. Secretary of the Treasury, 475 U.S. 851, 106 S.Ct. 1600, 89 L.Ed.2d 855, in determining whether the earned income credit refund is exempt from *244 provisions of the Social Security Act that allow "interception" of tax refunds payable to persons who have failed to meet child support obligations that have been assigned to the state. The Supreme Court, in Sorenson, stated:
"Unlike certain other credits, which can be used only to offset tax that would otherwise be owed, the earned-income credit is "refundable." Thus, if an individual's earned-income credit exceeds his tax liability, the excess amount is "considered an overpayment" of tax under § 6401(b) .... subject to specified setoffs, § 6402(a) directs the Secretary to credit or refund "any overpayment" to the person who made it. An individual who is entitled to an earned-income credit that exceeds the amount of tax he owes thereby receives the difference as if he had overpaid his tax in that amount." 475 U.S. at 854, 106 S.Ct. 1600.

¶ 4 Oklahoma adopted the earned income tax credit in 2001. Title 68 O.S.2001 § 2353(3) provides that any term used in the state income tax code shall have the same meaning as when used in a comparable context in the Internal Revenue Code, unless a different meaning is clearly required.
¶ 5 Fent alleges violations of various constitutional provisions: Art. 10 § 14, which provides that taxes shall be levied and collected by general laws and for public purposes only; Art. 10 § 15, which provides that the State shall not make donation by gift, subscription to stock, by tax or otherwise, to any company, association or corporation; Art. 5 § 51 which provides that the legislature shall pass no law granting to any association, corporation or individual any exclusive rights, privileges or immunities within this State; Art. 10 § 19 which provides that every act enacted by the legislature levying a tax shall specify distinctly the purpose for which said tax is levied and no tax levied and collected for one purpose shall ever be devoted to another purpose.
¶ 6 Fent argues that the state income tax is for the purpose of providing revenue for general governmental functions and that this statute permits the use of income tax revenues to make "direct gifts to the poor." Plaintiff argues that the federal earned income tax credit is not a tax refund at all, but is social welfare legislation to pay cash. He says that the earned income credit is not a refund because it is not a refund of taxes paid or withheld.
¶ 7 The issue before us concerns not the levying of a tax, but the adoption by the legislature of a tax credit. We have held previously that deductions to be allowed in computing net income depend entirely on the legislative will and must be clearly expressed. In re Levy, 1939 OK 355, 94 P.2d 537, syllabus by the Court. Deductions from gross income are a matter of legislative grace, and whether they are allowable [to the taxpayer] depends upon the statute. Green v. Oklahoma Tax Commission, 1940 OK 360, 107 P.2d 180, 181. The same rationale applies to tax credits enacted by the legislature.
¶ 8 Oklahoma's Constitution gives to the legislature the power not only to select the subjects of taxation, but to impose different tax classifications. Art. 10 § 13, Okla. Const. provides: "The State may select its subjects of taxation, and levy and collect its revenues independent of the counties, cities or other municipal subdivisions." Article 10 § 12 provides:
§ 12. Special forms of taxation-Amounts-Reference to Federal taxation.
The Legislature shall have power to provide for the levy and collection of license, franchise, gross revenue, excise, income, collateral and direct inheritance, legacy, and succession taxes; also stamp, registration, production or other specific taxes.
In the exercise of the powers provided for in this section, and notwithstanding any other provision of this Constitution, the Legislature may, with or without exceptions, modifications, or adjustments, define the amount on, in respect to, or by which any such tax or taxes are imposed or measured a) by reference to any provisions of the laws ... of the United States, as such laws may be or become effective at any time or from time to time; b) by reference to any amount or amounts finally ascertained in determining amounts subject to taxation by the United States; or c) by *245 reference to any amount or amounts of tax finally ascertained to be payable to the United States.
¶ 9 The State may classify persons and the origin of their incomes, and may apportion deductions or exemptions, provided the classifications and apportionment are reasonable and related to the object of taxation. Walker v. Oklahoma Tax Commission, 1945 OK 264, 164 P.2d 242, 243, syllabus of the Court. All that is required is that there be reasonable classification and reasonable opportunity for uniform or equal incidence upon the classes created. McCutchan v. Oklahoma Tax Commission, 1942 OK 416, 132 P.2d 337, 339. The determination by this Court is whether our legislature has "classified reasonably and has set up a system designed to operate with reasonable uniformity and equality on the given classes." Id.
¶ 10 The state, through the legislature, may select its subjects of taxation and classify them, and they may tax one subject or class and exempt other subjects or classes. In re Assessment of Sales Tax Against Knapp, 1939 OK 428, 95 P.2d 92, 93-94. The power of the state to distinguish, select and classify objects of taxation has a wide range of discretion. 95 P.2d at 94, citing In Re Gross Production Tax of Wolverine Oil Co., 53 Okla. 24, 154 P. 362, 367. It is a well-established rule that the right to select and classify subjects for taxation being legislative, classifications made by the legislature are presumed to be valid and constitutional. Id. In order to justify judicial interference, the classification adopted must be based upon an invidious and unreasonable distinction or difference with reference to the subject of the tax. Id. Unless that appears, the courts will not declare the classification void, though it may not meet their approval. Id. See also, Daube v. Oklahoma Tax Commission, 1944 OK 218, 152 P.2d 687, wherein we held that the state has the inherent power to classify its subjects of taxation for the purpose of levying a property tax or excise tax.
¶ 11 We addressed the constitutionality of the legislature's establishing different rates of taxation in Oklahoma Tax Commission v. Smith, 1980 OK 74, 610 P.2d 794. There, a tax statute specified a different rate of tax depending on whether a taxpayer elected to deduct his federal income taxes paid in computing state gross income. We said that this option given taxpayers to deduct or not deduct federal income taxes paid, with a different tax rate applying depending on such election, did not create an invidious classification of taxpayers in violation of the equal protection guarantees of the federal and state constitutions. Though a deduction allowed may appear arbitrary, the means and methods of arriving at such deduction are not open to judicial inquiry. 610 P.2d at 804. If the deduction applies uniformly to all subjects within the classification, constitutional equal protection requirements are satisfied, and judicial interference is not justified if it does not appear that the classification is abased upon an invidious and unreasonable distinction. Id. The legislature has the power to establish classes of taxpayers possessing varied deductions from income for purposes of computing state income tax liability. Id. We said that nothing in the federal constitution prevents a state from imposing double taxation, or any other form of unequal taxation, so long as the inequality is not based on arbitrary distinctions. Id. at 805. The fact that an income tax classification may favor a certain class does not demonstrate an arbitrary nature of the distinction if based on either a reasonable distinction or a difference in state policy. Id.
¶ 12 In Okla. Ass'n for Equitable Tax v. Oklahoma City, 1995 OK 62, 901 P.2d 800, 805-806, cert. den. 516 U.S. 1029, 116 S.Ct. 674, 133 L.Ed.2d 523, we emphasized the broad latitude given to lawmakers in creating classifications and distinctions in tax statutes. The issues there were: 1) whether the MAPS Refund Provision violated the uniformity requirement of 68 O.S.1991 § 2701(A)[1] *246 and 2) whether the refund conformed with equal protection provisions. The ordinance in that case was enacted by the city council and approved by the voters at a city-wide election. We said that unless a classification jeopardizes the exercise of a fundamental right or makes a classification on an inherently suspect characteristic, a classification that rationally furthers a legitimate state interest will withstand an equal protection challenge. 901 P.2d at 806. After reiterating that statutes must be interpreted to avoid constitutional conflict, and that all reasonable doubt is applied in favor of a statute's validity, we said that a statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it. Id. In that case, the challenged classification was a city ordinance allowing partial sales tax refunds to persons 65 and over. We said that the classification was rationally-related to the City's legitimate interest of providing senior citizens, whose income may be lower than younger taxpayers, with tax relief, and therefore, the refund provision did not violate equal protection guarantees afforded by the state and federal constitutions. Id.
¶ 13 We had constitutional uniformity requirements under consideration with respect to equality of ad valorem taxation in Williams Natural Gas Co. v. State Board of Equalization, 1994 OK 150, 891 P.2d 1219, cert. den. 516 U.S. 816, 116 S.Ct. 70, 133 L.Ed.2d 31. In that case it was alleged by public services corporations that assessing their property at a ratio greater than that applied to property owned by railroads and airlines, violated the Equal Protection Clause and also violated the constitutional uniformity requirements. Williams Companies argued that the assessments violated Art. 10, § 5 of the Oklahoma Constitution, which requires that taxes be uniform upon the same class of subjects. We determined Art. 10 § 22 to be the applicable Constitutional provisionit provides that nothing in the Constitution shall be held or construed to prevent the classification of property for purposes of taxation; and the valuation of different classes by different means or methods. We said that railroads and airlines were a distinct subclass of public services corporations, whose property may, under the Oklahoma Constitution, be valued with a different assessment ratio.
¶ 14 We have recognized also that the ability of the taxpayer to pay the tax is generally recognized as a substantial ground for classification of subjects for the purpose of graduated rates or levies. Daube v. Oklahoma Tax Commission, 1944 OK 218 ¶ 17, 152 P.2d 687. We quoted with approval from Knowlton v. Moore, 178 U.S. 41, 20 S.Ct. 747, 774, 44 L.Ed. 969:
"The review which we have made exhibits the fact that taxes imposed with reference to the ability of the person upon whom the burden is placed to bear the same have been levied from the foundation of the government. So, also, some authoritative thinkers, and a number of economic writers, contend that a progressive tax is more just and equal than a proportional one. In the absence of constitutional limitation, the question whether it is or not is legislative and not judicial." Id.

¶ 15 A cursory review of the statues that provide for exemptions or credits from income taxation in the Income Tax Code, 68 O.S.2001 § 2357 et seq., reveal that the legislature has selected various areas for granting tax credits and the ways that they are implemented. Some of the tax credits provide that any credits allowed but not used in a tax year may be carried over in certain specified tax years. See, for example, 68 O.S. Supp. 2003 § 2357.26(E). Some statutes provide that if the tax credit exceeds the amount of income taxes due, or if there are no state income taxes due on the income of the taxpayer, the amount of the credit not used as an offset against the income taxes of a taxable year may be carried forward as a credit against subsequent income tax liability for a period not to exceed three years. 68 O.S. Supp.2003 § 2357.22(F). Some sections allow the credit only in the year in which the credit was earned. See, for example, 68 O.S. 2001 § 2357.33, the tax credit for immunization against Hepatitis A. Subsection (D) provides that the tax credit shall be available to the taxpayer in the tax year in which the *247 employee was immunized and shall not carry forward to subsequent tax years, and such credit shall not be refunded to the taxpayer.
¶ 16 Some tax credits, such as the earned income credit, may be refundable to the taxpayer. The tax credit for owners of residential real property damaged or destroyed in the May 3, 1999, October 9, 2001 and May 8 or 9, 2003 tornadoes, for example, provides that the credit shall be a refundable credit. Eligible taxpayers shall be entitled to claim the credit for five consecutive years. If the taxpayer has no income tax liability, or if the credit exceeds the amount of the income tax liability of the taxpayer, then the credit, or the balance thereof, shall be paid out in the same manner and out of the same funds as refunds of income taxes are paid and so much of the fund as is necessary for such purposes is thereby appropriated. 68 O.S. Supp.2003 § 2357.29(B).
¶ 17 See also, for example, title 68 O.S.2001 § 2358.1, which exempts from Oklahoma income tax the income of a member of the armed forces of the United States or a civilian who has been or is detained as a prisoner of war or listed as missing in action in a conflict with an enemy of the United States. The income of the spouse or dependent of such person also is exempt from Oklahoma income tax for and during the time in which such person was or is detained as a prisoner of war or is confirmed as missing in action, and for the remainder of such taxpayer's income tax year following the release of such prisoner of war, or until a person missing in action is declared deceased by the Armed Forces. If income tax has been paid upon the income of any such person, or upon the income of such person's spouse or dependent for any year during the time when such person was or is a prisoner of war or missing in action, the tax monies shall be refunded to the person or persons having paid such tax. Such refund shall be made by the Oklahoma Tax Commission out of the Oklahoma Income Tax Adjustment Fund and so much of such fund as is necessary was thereby appropriated. That section also provides that the statute of limitations applicable to refunds of income taxes shall not apply to taxpayers covered by the Act.
¶ 18 The legislature declares the fiscal policy of Oklahoma, and has the responsibility to do so. The general rule in Oklahoma is that all that is required [for income tax classification to be constitutional] is that there be reasonable classification and reasonable opportunity for uniform or equal incidence upon the class created. Sowders v. Okla. Tax Comm., 1976 OK 95, 552 P.2d 698, 700. In Sowders, we held that the legislature, in creating separate classification for single and married taxpayers, had a reasonable basis, which was founded on the "ability to pay." Id. An invalid tax classification is one that discriminates between persons or property in like situations, or which is arbitrary, illusory or one that has no fair or substantial relation to the purpose for which it is made. Suglove v. Okla. Tax Comm., 1979 OK 168, 605 P.2d 1315, 1320.
¶ 19 This Court has no authority to consider the desirability, wisdom or practicability of fiscal legislation. Calvey v. Daxon, 2000 OK 17 ¶ 21, 997 P.2d 164, 171. In ruling on decisions made by the legislature to enact tax credits, it is not the duty or the privilege of this Court to rule on the wisdom, practicality or common sense of the tax credits. We are limited to determining whether such decisions fall within constitutional parameters. The State here has chosen to benefit a particular class of taxpayers by creating the earned income creditthey have also chosen to benefit other classes of taxpayers with the investment tax credit, with the tornado tax credit, and with numerous other tax credits. See, 68 O.S. § 2357 et seq. If there are two possible interpretations, one of which would hold legislation unconstitutional, the construction must be applied which renders them constitutional 997 P.2d at 172. Unless a law is shown to be fraught with constitutional infirmities beyond a reasonable doubt, this Court is bound to accept an interpretation that avoids constitutional doubt as to the validity of the provision. Id. Here the fiscal policy is to benefit a class of taxpayers that work, but whose income is below a certain level. It does not constitute the use of a tax for a purpose different from that for which it was collected. The stated purpose of the income tax is to *248 provide revenue for "general governmental functions of state government." 68 O.S. Supp.2003 § 2352. Legislative decisions with regard to fiscal policy of the state is a general governmental function of state government.
¶ 20 Here the tax credit operates equally upon the class of taxpayers who are entitled to claim it. The purposes behind the federal earned income credit reflect social welfare policy. In Sorenson v. Secretary of Treasury, 475 U.S. 851, 864, 106 S.Ct. 1600, 89 L.Ed.2d 855 (1986), the United States Supreme Court stated:
"The earned-income credit was enacted to reduce the disincentive to work caused by the imposition of Social Security taxes on earned income (welfare payments are not similarly taxed), to stimulate the economy by funneling funds to persons likely to spend the money immediately, and to provide relief for low-income families hurt by rising food and energy prices. Each is an undeniably important objective . . ."
¶ 21 The same rationale applies to the state's enactment of the earned income credit in Oklahoma. The earned income credit promotes a "public purpose" as determined by the legislature of the State of Oklahoma to promote the general welfare, economic security, and prosperity of its citizens, and does not constitute a gift by the state to individuals under Art. 10 § 15 or Art. 5 § 51. In Way v. Grand Lake Association, Inc., 1981 OK 70, 635 P.2d 1010, it was alleged that the legislation in question was not for a public purpose and constituted a gift to private entities. There, the legislature, with the intent to encourage the promotion of tourism through multi-county organizations acting in cooperation with a statewide program of the Tourism and Recreation Department, authorized the match of one-half of the allowable expenditures of multi-county organizations, based on actual expenditures by such organization, less any discount, refund or rebate to the organization. The program was funded in 1980 by a line-item appropriation to the Tourism Department for fifteen of such private organizations, including the Grand Lake Association, Inc. The Attorney General rendered an opinion that funding of such organizations was constitutionally invalid. In directing payment of the funds, we ruled that the legislative appropriation served a public purpose within the meaning of Art. 10 § 14 and did not constitute a gift or appropriation of tax moneys to a private entity, under Art. 10 § 15.
¶ 22 In Way, we quoted with approval from previous cases of this Court stating that the term `public purpose' within the meaning of Art. 10 § 14 is synonymous with governmental purpose, and means a purpose affecting the inhabitants of the state or taxing district as a community and not merely as individuals, and that a use may be public although it is of benefit primarily to the inhabitants of a small and restricted locality. 635 P.2d at 1015-1016, citing Bd. of Com'rs of Marshall County v. Shaw, 199 Okla. 66, 182 P.2d 507, 515 (1947). We went on to say at page 1017:
". . . . the Legislature is sovereign, and has no limitations as to expenditures, either for its own members or for other departments of state government, save and except where the Constitution of the state or nation has seen fit to place an inhibition. This is so well recognized that it has become all but axiomatic. . . ." quoting Dixon v. Shaw, 122 Okla. 211, 253 P. 500 (1927).

¶ 23 The state earned income credit applies to a class of taxpayers entitled to the federal earned income credit. The state earned income tax credit is 5% of the earned income tax credit allowed under the internal revenue code. 68 O.S. § 2357.43. The legislature in this case enacted, and the governor signed into law, the state earned income tax credit, and the tax credit is implemented according to that law. The legislature has decided to benefit a class of taxpayers who work, but who do not earn substantial wages. It is the duty of the courts to uphold a legislative act unless it plainly and clearly violates the constitution. Way v. Grand Lake Ass'n, Inc., 635 P.2d at 1010, citing Herndon v. Anderson, 165 Okla. 104, 25 P.2d 326 (1933).
¶ 24 The plaintiff has failed to carry the burden necessary to invalidate the statute. The legislature has authority to create different *249 classes for purposes of taxation; the classification is reasonable and serves a legitimate public purpose and it operates with reasonable uniformity and equality upon the given class.
¶ 25 CONCUR: WATT, C.J., HODGES, HARGRAVE, KAUGER, WINCHESTER, EDMONDSON, JJ.
¶ 26 CONCUR IN RESULT: BOUDREAU, J.
¶ 27 DISSENT: OPALA, V.C.J., LAVENDER, J.
NOTES
[1] 68 O.S.1991 § 2701(A) provided:

"Any incorporated city or town in this state is hereby authorized to assess, levy, and collect taxes for general and special purposes of municipal government as the Legislature may levy and collect for purposes of state government except ad valorem property taxes. Provided, taxes shall be uniform upon the same class subjects, and any tax, charge, or fee levied upon or measured by income or receipts from the sale of products or services shall be uniform upon all classes of taxpayers; * * *"